UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDGAR NELSON PITTS,

            Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

            Defendants.

Civil Action No. 19-1784 (ABJ)

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Renewed Partial Motion for Summary Judgment, ECF No. 25. For the reasons discussed below, the Court GRANTS defendants' motion.

**I. BACKGROUND**

Plaintiff is a federal prisoner who currently is incarcerated at the United States Penitentiary, Administrative Maximum, in Florence, Colorado ("ADX Florence"). He brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, in an effort to obtain records maintained by the Federal Bureau of Prisons ("BOP") and the Civil Rights Division, both components of the United States Department of Justice ("DOJ").[1]

**A. FOIA Request to the Federal Bureau of Prisons**

Plaintiff submitted three separate requests to BOP in April 2019. SMF (ECF No. 25-2) ¶ 1. BOP combined them, assigned the matter a single tracking number (FOIA Request No. 2019-03736), and summarized the requests as follows:

---

[1] Plaintiff also sought information from the DOJ's Office of the Inspector General ("OIG"), Office of Information Policy ("OIP") and the Federal Bureau of Investigation ("FBI"). The Court previously determined that plaintiff had not submitted a FOIA request to OIP and that OIG and FBI complied with their obligations under FOIA. *See Pitts v. U.S. Dep't of Justice*, No. 1:19-cv-1784 (D.D.C. June 30, 2020).

1

> a. Information detailing the cost of Plaintiff's 25 years of imprisonment in BOP custody, including total cost, cost per year, and allocations of the cost to food, health care, hygiene, and staff salaries.
>
> b. A nine (9) page report by Congressional "House Investigators for the Committee on Oversight and Government Reform," as described in an article in the USA Today newspaper on January 7, 2019.
>
> c. All information enclosed in correspondence that was returned to the U.S. Department of Justice, as described in a "Returned Correspondence" notice Plaintiff received on October 15, 2018.

*Id.* ¶ 2; *see generally* Supp. Glover Decl. (ECF No. 25-3), Ex. A.  BOP assigned the matter to Holly Glover, a Paralegal Specialist in BOP's North Central Regional Office.  *See* SMF ¶ 3; Supp. Glover Decl. ¶ 2.

### 1. Costs of Incarceration

Based on Glover's understanding that "BOP does not maintain records or information that would detail the costs of an individual's incarceration, [she] did not initiate a search for responsive records."  SMF ¶ 6.  She understood that "BOP maintains cost and budget data for Federal Correctional Complexes, or individual institutions if they are stand-alone facilities."  Supp. Glover Decl. ¶ 12.  If BOP were to respond to plaintiff's request, Glover believed that "BOP staff would have had to conduct research, compile data, and create a document based on that data," thereby having to "create a document that is not otherwise kept in the ordinary course of BOP business."  *Id.*

BOP first responded by letter dated May 6, 2019, explaining:

> FOIA does not require the agency to answer questions in response to information requests, but rather is limited to requiring agencies to provide access to authorized responsive existing documents. The agency is not required to add explanatory material to a document to make it more understandable; conduct research to answer questions; give recommendations or opinions; or give conclusions, in response to FOIA requests.

SMF ¶ 7.

After this litigation commenced, a second Paralegal Specialist, C. Treadway, reviewed plaintiff's FOIA request, *id.* ¶ 8, determined that BOP could "run reports concerning the costs of incarceration for its institutions," *id.*, and asked "Financial Management personnel in the BOP's Central Office to . . . search for potentially responsive records[.]" *Id.* ¶ 9.  This search yielded "a [one-page] document reflecting the costs of incarceration for the Federal Correctional Complex in Florence, Colorado, where [p]laintiff is currently incarcerated," to include "the cost of staff salaries and benefits, food and medical services, and the total daily cost" for the entire Complex for the preceding five years.[2]  *Id.* ¶ 10.  BOP released this document to plaintiff in full on December 18, 2019.  *See id.* ¶¶ 12-13; *see generally* Treadway Decl. (ECF No. 25-4), Ex. C.

### 2. Congressional Committee Report

"By [p]laintiff's own description," the information he sought in the second portion of his FOIA request was a report issued by a Committee of the U.S. House of Representatives.  SMF ¶ 16.  "BOP does not maintain Congressional [Committee] reports in its ordinary course of business," *id.* ¶ 17, and responded:

> The records, from the House Committee on Oversight and Reform, are not [BOP] records or your request does not indicate you are seeking records maintained by BOP.  If you believe BOP maintains these records, please resubmit your request with any details you have that will enable us to locate these records. Otherwise, you should contact the entity that created the records.

---

[2]  The Florence Federal Correctional Complex includes an administrative security penitentiary (ADX Florence), a high security penitentiary (USP Florence), and a medium security federal correctional institution (FCI Florence) with an adjacent minimum security camp.

3

*Id.* ¶ 18. Plaintiff did not resubmit his request, *id.* ¶ 19, and since has acquired a copy of the report from another source. Pl.'s Opp'n (ECF No. 28) at 2.[3] He informed the Court that he no longer demands release of this Committee report. *Id.*

### 3. Returned Correspondence

In October 2018, plaintiff received a notice that correspondence addressed to him "had been rejected and returned because . . . the correspondence contained 'information that may jeopardize the security of the institution.'" SMF ¶ 20. BOP staff did not conduct a search for records responsive to this portion of plaintiff's FOIA request, *id.* ¶ 23, given the existence of a grievance procedure by which the intended recipient could appeal the rejection. *See id.* ¶¶ 21-22; *see generally* Supp. Glover Decl., Ex. C. Nevertheless, after this litigation commenced, Glover retrieved from the Special Investigative Services ("SIS") Department at ADX Florence the portion of the rejected correspondence SIS retained, to include "a memorandum explaining the rejection (1 page), the envelope and original correspondence letter from the FBI (2 pages), an explanation of FOIA exemptions included in the FBI's correspondence (1 page), and twenty-two (22) pages of records, of which 7 pages were duplicates, enclosed with the correspondence." SMF ¶ 27.

These materials included information "regarding a 'Black Identity Extremist Report,'" which "was determined to contain[] detailed descriptions of specific acts of violence towards law enforcement officers, both on the street and inside correctional environments." *Id.* ¶ 29. Relying on Exemptions 6, 7(C), 7(E), and 7(F), *see id.* ¶¶ 31-33, BOP withheld 22 pages of these records in full, released one page in part, and released three pages in full. *Id.* ¶ 30.

---

[3] The Court construes "Plaintiff [D]isputes the Assertion of Facts," ECF No. 28, as his opposition ("Pl.'s Opp'n") to defendants' renewed motion for summary judgment.

Plaintiff represents that he "was able to acquire" and no longer demands the release of information pertaining to the returned correspondence.  Pl.'s Opp'n at 2.

### B. FOIA Request to the Civil Rights Division

Plaintiff's May 8, 2017 FOIA request to the OIG sought copies of reports pertaining to: (1) the Ferguson Police Department and the death of Michael Brown; (2) the Minneapolis Police Department and the death of Jamar Clark; and (3) the Chicago Police Department.  *See* Waller Decl. (ECF No. 10-3), Ex. 1 (ECF No. 1-3 at 7).  At OIG's suggestion, *see id.*, Ex. 3 (ECF No. 1-3 at 12), plaintiff sent a FOIA request directly to the Civil Rights Division by letter dated November 7, 2017, for this same information.  *See* Cain Decl. (ECF No. 25-5), Ex. A (ECF No. 25-5 at 7).  Plaintiff's request did not make its way to the appropriate staff member of the Civil Rights Division for several months.  *See* Kagle Decl. (ECF No. 25-6) ¶¶ 4-7.

Plaintiff has obtained a copy of the report about the Ferguson Police Department from another inmate, *see* Pl.'s SMF (ECF No. 15 at 13-19) ¶ 25, and a copy of the Chicago Police Department report from the Executive Office for United States Attorneys, *id.* ¶ 22.  The Civil Rights Division has responded to plaintiff's request for a DOJ report about the Minneapolis Police Department concerning the death of Jamar Clark by releasing in full a publicly-available press release summarizing the investigation.  Reply (ECF No. 30), Ex. A (ECF No. 30-1 at 4-7).  It otherwise denied the request and invoked Exemptions 5 and 7(C).  *See id.*, Ex. A (ECF No. 30-1 at 2).

## II. ANALYSIS

### A.  Legal Standard

This case, like "the vast majority of FOIA cases[,] can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  The Court

5

will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Hall v. Stoneman*, No. 19-CV-109, 2020 WL 1451586, at *4 (D.D.C. Mar. 25, 2020). Ordinarily, where the agency moves for summary judgment, it must identify materials in the record to demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). Plaintiff as the non-moving party must point to specific facts in the record to show that there remains a genuine issue suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "But where a plaintiff has not provided evidence that an agency acted in bad faith, 'a court may award summary judgment solely on the basis of information provided by the agency in declarations,'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, No. 14-CV-1935, 2016 WL 410993, at *1 (D.D.C. Feb. 2, 2016) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)), *aff'd*, 847 F.3d 735 (D.C. Cir. 2017), provided that the declarations are not "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

### B. BOP's Response to Plaintiff's FOIA Request
#### 1. Adequacy of the BOP's Searches for Responsive Records

"A requester dissatisfied with the agency's response that no records have been found may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted); *see Lockett v. Wray*, 271 F. Supp. 3d 205, 208 (D.D.C. 2017) ("The Court must then determine the

adequacy of the agency's search, guided by principles of reasonableness.") (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)). An adequate search is one "reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

An agency may prevail on summary judgment with a "no records" response by "establish[ing] that it located no records responsive to plaintiff's request after a reasonable search using 'methods reasonably expected to produce the information requested.'" *Davidson v. EPA*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The agency may rely on declarations explaining the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)), and such declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

### 2. Information Regarding Costs of Incarceration

Plaintiff's request set forth four questions:

> How much money does it cost per year to keep me in prison?
>
> How much of that money is allotted to food health are and hygiene etc.
>
> How much of that money is allotted to BOP employees . . . for salary.
>
> The total cost of my 25 years imprisonment.

Treadway Decl., Ex. A (ECF No. 25-3 at 9). Glover construed the request as "asking for the individual costs of his incarceration, and how those costs are further broken down into specific

categories." Supp. Glover Decl. ¶ 12.  Initially, BOP did not conduct a search for responsive records on the belief that the agency "does not maintain records that reveal the costs of incarceration for any individual inmate," instead "maintain[ing] cost and budget data for Federal Correctional Complexes, or individual institutions if they are stand-alone facilities." *Id.*  It was thought that a response to plaintiff's FOIA request would require staff "to conduct research, compile data, and create a document based on that data," if it were even possible "to break down the cost of [plaintiff's] individual incarceration" broken down by categories to include food, health, and staff salaries. *Id.*

Treadway subsequently opined that BOP could "run reports concerning the costs of incarceration for its institutions" and that such reports "would be reasonably responsive to [p]laintiff's . . . request[.]" Treadway Decl. ¶ 13.  Treadway knew that Financial Management personnel at BOP's Central Office "maintained data related to the costs of incarceration" which would be responsive potentially to plaintiff's request, and she asked that they conduct a search. *Id.* ¶ 14.  That search yielded a one-page document "reflecting the costs of incarceration for the Federal Correctional Complex in Florence Colorado," and including "the cost of staff salaries and benefits, food and medical services, and the total daily cost" to operate the Complex for the preceding five years. *Id.* ¶ 15.  Treadway explained that "BOP's record system only retains data for the previous five . . . years," and for this reason, BOP did not produce information about the cost of plaintiff's imprisonment for the 25 years he has been incarcerated. *Id.* ¶ 15 n.4.  Further, Treadway explained, "BOP does not track data in the manner" plaintiff wanted. *Id.* ¶ 17.  While the document BOP produced was "not specifically responsive to [p]laintiff's request," Treadway deemed it "reasonably responsive." *Id.* ¶ 16.

Plaintiff complains that BOP's one-page document "does not satisfy [his] request" Pl.'s Opp'n at 1, and deems it "unbelievable," *id.* at 2, that BOP would not be able to produce responsive records in the desired format. He asserts that "there is a budget with appropriations for food, housing, hygiene and health care," and that BOP can satisfy his request by releasing "[t]he BOP Congressional Budget Justification Report[.]" *Id.* Missing from plaintiff's response is any argument to counter BOP's representation that the agency does not maintain cost data for any particular inmate in its custody. Nor does plaintiff address BOP's representation that, to respond directly to his FOIA request, the agency would be required to create records that ordinarily it does not maintain. FOIA imposes no such obligation. Rather, under FOIA, an agency must "provide access to those [documents] which it in fact has created and retained." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *see Frank v. U.S. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996) ("The Justice Department is not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question."). Nor are "requests for information rather than records . . . considered proper FOIA requests." *Tokar v. U.S. Dep't of Justice*, 304 F. Supp. 3d 81, 91 (D.D.C. 2018) (citation omitted).

The Court concludes that BOP's initial response to plaintiff's FOIA request was reasonable, as was its subsequent search for cost data particular to the Federal Correctional Complex in Florence, Colorado. Further, the Court accepts BOP's representation that "[t]here is no basis to believe that the BOP currently possesses any nonexempt documents or information responsive to the FOIA request that has not already been released to [p]laintiff." Treadway Decl. ¶ 18.

### 3. Congressional Committee Report and Returned Correspondence

Plaintiff has obtained copies of, and no longer demands release of, a report of the House Committee on Oversight and Reform and returned correspondence. These matters no longer are in dispute. *See Bayala v. U.S. Dep't of Homeland Sec., Office of Gen. Counsel*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("[O]nce all the documents are released to the requesting party, there no longer is any case or controversy.") (citing *Perry*, 684 F.2d at 125); *Williams & Connolly v. SEC*, 662 F.3d 1240, 1244 (D.C. Cir. 2011) (where agency turned over to requester "eleven sets of notes pursued in this appeal, the controversy is moot with respect to those documents"); *see also Crooker v. U.S. State Dep't*, 628 F.2d 9, 11 (D.C. Cir. 1980) ("Where the records have already been furnished, it is abusive and a dissipation of agency and court resources to make and process a second claim.").

### III. CONCLUSION

The Court concludes that BOP conducted reasonable searches for records responsive to plaintiff's FOIA request regarding costs of incarceration and that BOP's responses to plaintiff's requests for a House Committee on Government Oversight and Reform report and BOP records pertaining to returned correspondence no longer are in dispute. Remaining for the Court's consideration is defendants' response to plaintiff's FOIA request to the Civil Rights Division for a DOJ report about the Minneapolis Police Department concerning the death of Jamar Clark. Counsel represents that the Civil Rights Division is prepared to move for summary judgment. *See* Reply at 2 n.2.

Accordingly, it is hereby

ORDERED that Defendants' Renewed Partial Motion for Summary Judgment [25] is GRANTED; and it is

FURTHER ORDERED that, not later than July 2, 2021, defendants shall file a motion regarding the Civil Rights Division's response to plaintiff's FOIA request.

SO ORDERED.


DATE: May 28, 2021				AMY BERMAN JACKSON
						United States District Judge