UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EDGAR NELSON PITTS, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 19-1784 (ABJ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Renewed Motion for Summary Judgment, ECF No. 32. For the reasons discussed below, the Court GRANTS the motion.

**I. BACKGROUND**

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552. The sole matter remaining for the Court's consideration is defendants' response to plaintiff's FOIA request to the Civil Rights Division ("CRT" or "defendant"), a component of the U.S. Department of Justice ("DOJ"), for "the DOJ Report [about] the Minneapolis Police Department concerning the death of Jamar Clark." Statement of Material Facts Not In Genuine Dispute (ECF No. 32-2, "SMF") ¶ 10.

CRT staff did not "locate a definitive 'report,'" *id.* ¶ 12, but did find two potentially responsive records. The first was a "Notice to Close File" and companion memorandum, Kagle II Decl. (ECF No. 32-3) ¶ 12, "drafted at the culmination of CRT's investigation into the Minneapolis Police Department and the death of Jamar Clark." SMF ¶ 13. Because the Notice to Close File is not a "report," CRT did not consider this document responsive to plaintiff's FOIA request. *See id.*

1

¶ 14. Nevertheless, CRT notified plaintiff that it had been located and that CRT withheld the document in full under Exemptions 5 and 7(C). *Id.* The second was "a summary of [CRT's] investigation into the death of Jamar Clark," *id.* ¶ 16, "made available to the public through the Office of Public Affairs via Press Release 16-634." Kagle II Decl ¶ 15. CRT sent plaintiff an unredacted hard copy to the press release. SMF ¶ 16; *see* Kagle II Decl., Ex. B. Plaintiff did not appeal CRT's determination administratively. *See* SMF ¶¶ 18-19.

## II. ANALYSIS

### A. Legal Standard

This case, like "the vast majority of FOIA cases[,] can be resolved on summary judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Hall v. Stoneman*, No. 19-CV-109, 2020 WL 1451586, at *4 (D.D.C. Mar. 25, 2020). Ordinarily, where the agency moves for summary judgment, it must identify materials in the record to demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1). Plaintiff as the non-moving party must point to specific facts in the record to show that there remains a genuine issue suitable for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "But where a plaintiff has not provided evidence that an agency acted in bad faith, 'a court may award summary judgment solely on the basis of information provided by the agency in declarations,'" *Judicial Watch, Inc. v. U.S. Dep't of Defense*, No. 14-CV-1935, 2016 WL 410993, at *1 (D.D.C. Feb. 2, 2016) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)), *aff'd*, 847 F.3d 735 (D.C. Cir. 2017), provided that the declarations are not "conclusory, merely reciting statutory standards,

or . . . too vague or sweeping." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote omitted).

Defendant filed the renewed summary judgment motion on July 2, 2021. The Court issued an Order (ECF No. 33) on July 6, 2021, advising plaintiff of his obligation to respond to defendant's motion. The Order warned plaintiff that, if he failed to file his opposition to defendant's motion by August 6, 2021, the Court may accept as undisputed CRT's Statement of Material Facts Not In Genuine Dispute and grant the motion without the benefit of plaintiff's position. To date, plaintiff has not filed an opposition or any other response to the motion. Accordingly, the Court accepts as undisputed CRT's proposed facts. Still, "a motion for summary judgment cannot be 'conceded' for want of opposition." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). The "Court must always determine for itself whether the record and any undisputed material facts justify granting summary judgment." *Id.* (citation and internal quotation marks omitted). Here, defendant meets its burden.

### B. CRT's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted); *see Lockett v. Wray*, 271 F. Supp. 3d 205, 208 (D.D.C. 2017) ("The Court must then determine the adequacy of the agency's search, guided by principles of reasonableness.") (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998)). An adequate search is one "reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). The agency may rely on declarations explaining the method and scope of its search, *see Perry v. Block*, 684 F.2d 121, 126

(D.C. Cir. 1982)), and such declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

CRT represents that "a search of its record repositories . . . failed to locate a definitive 'report' regarding the Minneapolis Police Department and the death of Jamar Clark[.]" SMF ¶ 12. Its declarant explains that "[t]he culmination of the Civil Rights Division's investigation into the Minneapolis Police Department and the death of Jamar Clark was not a 'report' but merely a Notice to Close File." Kagle II Decl. ¶ 10.

Where and how CRT staff located the Notice to Close File is not described, and there are practically no proffered facts demonstrating the adequacy of CRT's search. Yet it appears that the search yielded a responsive record. Although the reasonableness of a search is not determined by its results, *see Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), given plaintiff's apparent lack of interest in litigating his case, the Court will not trouble itself on this point.

### C. Exemptions 5 and 7(C)

If the Notice to Close File were construed as a "report" responsive to plaintiff's FOIA request, CRT argues that the document properly is withheld in full under Exemptions 5 and 7(C). *See* Defs.' Mem. at 12-18.

#### 1. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "is interpreted to encompass . . . three evidentiary privileges:

4

the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002). Here, CRT argues that the deliberative process and attorney work product privileges apply. *See generally* Mem. of Law in Support of Defs.' Renewed Mot. for Summ. J. (ECF No. 32-1, "Defs.' Mem.") at 12-15 (page numbers designated by CM/ECF). In support, CRT's declarant states:

> [T]he long-form Notice to Close File represents an internal summary of Agency findings and recommendations aimed at informing the Divisions' Management[.] Said Notice to Close File includes a substantive memorandum in support of a recommendation to authorize, resolve, or close a case. The memorandum represents the collective professional deliberations of the Division's attorney complement and their professional judgments in proposing a course of action to their supervisors and to Division Management. It details attorney analysis and attorney impressions of the almost thirty witness examinations, the Clark autopsy results, and results of the DNA and other forensic reports. Additionally, the memorandum discusses legal theories, personal opinions, and evaluates and weighs the feasibility of a prosecution under the applicable statutes.

Kagle II Decl. ¶ 12.

### a. Deliberative Process Privilege

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). "Documents are predecisional if they are generated before the adoption of an agency policy, and deliberative if they reflect the give-and-take of the consultative process." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017)). The declarant explains that the Notice to Close File not only "represents the collective professional deliberations" of CRT attorneys, but also "evaluates and weighs the feasibility of a prosecution," Kagle II Decl. ¶ 12, culminating in a

recommendation to close the matter. Thus, CRT adequately demonstrates that the Notice to Close File is predecisional and deliberative.

### b. Attorney Work Product Privilege

Records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of an attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see Tax Analysts*, 117 F.3d at 620 (stating that "work product doctrine protects . . . deliberative materials" such as an attorney's opinions, conclusions, and legal theories, as well as "factual materials prepared in anticipation of litigation"). Because the Notice to Close File was prepared by attorneys and reflects their impressions, legal theories, personal opinions and recommendations, *see* Kagle II Decl. ¶ 12, it is apparent that the attorney work product privilege applies.

### 2. Exemption 7(C)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). For example, Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). CRT argues that the Notice to Close File and companion memorandum were compiled for law enforcement purposes and that its disclosure could reasonably be expected to violate the privacy interests of third parties mentioned therein. *See generally* Defs.' Mem. at 15-18.

CRT "enforces federal statutes prohibiting discrimination on the basis of race, color, sex (including pregnancy, sexual orientation, and gender identity), disability, religion, familial status,

6

national origin, and citizenship status," SMF ¶ 20, and its declarant explains that the Notice to Close File was compiled for these law enforcement purposes. Kagle II Decl. ¶ 13. It is clear from defendant's submissions that CRT attorneys were considering whether to prosecute, *see id.* ¶ 12, and preparation of the Notice "is the standard procedure for investigations which do not proceed to a prosecution." *Id.* ¶ 10. These are law enforcement purposes, and CRT thus demonstrates that Exemption 7 applies. *See Bartko v. U.S. Dep't of Justice*, 898 F.3d 51, 64 (D.C. Cir. 2018) ("To qualify as law-enforcement records, the documents must arise out of 'investigations which focus directly on specifically alleged illegal acts * * * which could, if proved, result in civil or criminal sanctions.'") (quoting *Rural Housing Alliance v. U.S. Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)).

With regard to the privacy interests of third parties mentioned in the Notice to Close File, the declarant explains:

> The Notice contains names and other identifying information that would reveal the identity of, and disclose personal information about, individuals who were involved or associated with Mr. Jamar Clark, the immediate and subsequent law enforcement activity, the medical response, witnesses, suspects, co-defendants, sources and bystanders. While this list is not exhaustive, almost thirty witnesses were interviewed about this incident which includes third party names, nicknames, street addresses, home addresses, personal relationships, medical information, statements of affiliation and affinity, locations, and witness statements, all of which could reasonably constitute an unwarranted invasion of that third-party's personal privacy. Disclosure of this information could subject these individuals to possible harassment, embarrassment, derogatory inference and suspicion, reprisals and retaliation.

Kagle II Decl. ¶ 13.

Generally, "individuals have an obvious privacy interest cognizable under Exemption 7(C) in keeping secret the fact that they were subjects of a law enforcement investigation," and that interest "extends to third parties who may be mentioned in investigatory files, as well as to

7

witnesses and informants who provided information during the course of an investigation." *Nation Magazine, Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894 (D.C. Cir. 1995); *see Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) (acknowledging "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity, and "[p]rotection of this privacy interest is a primary purpose of Exemption 7(C)"). The Court concludes that the third parties mentioned in the Notice to Close File have cognizable privacy interests.

"Determining whether an invasion of privacy is 'unwarranted' within the meaning of Exemption 7(C) requires, as the Supreme Court held in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989), 'balanc[ing] the public interest in disclosure against the interest [in privacy] Congress intended the Exemption to protect.'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (brackets in original). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773). It is plaintiff's burden to articulate a public interest sufficient to outweigh any individual's privacy interest, *see Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004), and he has not met his burden. Neither the parties nor the Court identifies a public interest to outweigh the third parties' privacy interests, and the Court concludes that CRT properly relies on Exemption 7(C) to withhold third party information from the Notice to Close File. *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (recognizing D.C. Circuit "decisions [which] have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants"); *SafeCard Servs.*, 926 F.2d at 1206 ("hold[ing] categorically that, unless access to the names and addresses

of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure").

### D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

CRT argues that the Notice to Close File and companion memorandum are "so permeated with exempt material that no useful portions could be release without compromising the interests protected by FOIA exemptions." Defs.' Mem. at 19. Its declarant explains:

> As the Notice to Close File and its companion memorandum are composed to inform, persuade and to make internal recommendations to Division Management, both are permeated with exempt information inextricably intertwined with non-exempt material, segregation of which would result in the release of fragmented portions of minimal or no informational content. Disclosure of the exempt material could lead to the identification of third parties . . . as well as have a grave chilling effect on the discourse and deliberations between supervisor and subordinate within the Division.

Kagle II Decl. ¶ 12. An attempt to release segregable information would "leav[e] an unintelligible residual husk after applying" Exemptions 5 and (7)(C). *Id.* ¶ 14. The Court deems this explanation sufficient, and concludes that CRT has released all reasonably segregable information.

9

## III. CONCLUSION

The Court concludes that CRT met its burden on summary judgment, demonstrating that its search for responsive records was adequate, and to the extent the Notice to Close File is responsive, demonstrating that the document properly is withheld in full under Exemptions 5 and 7(C). Defendants' renewed motion for summary judgment is therefore GRANTED. An Order is issued separately.


DATE: October 4, 2021              /s/
                                   AMY BERMAN JACKSON
                                   United States District Judge